George J. BAUMLER, Appellant,

v.

Mrs. Dorothy B. HAZELWOOD, Administratrix, Appellee.

No. 15673.

Court of Civil Appeals of Texas.

Dallas.

July 22, 1960.

Rehearing Denied Sept. 30, 1960.

Blakeley & Williams, Houston, for appellant.

Leachman, Gardere, Akin & Porter and Edward E. Crowell, Jr., Dallas, for appellee.

DIXON, Chief Justice.

Appellant George J. Baumler brought suit against Mrs. Dorothy B. Hazelwood, Administratrix of the Estate of her deceased husband, Jeff Carl Hazelwood, for damages resulting from injuries to person and property sustained in an automobile collision. Appellant Baumler, driver of one of the cars, was seriously injured; Jeff

Carl Hazelwood, driver of the other car, lost his life in the collision.

Appellee filed an answer and cross-action in which she sought damages for the death of her husband.

A jury found that Jeff Carl Hazelwood (1) failed to keep a proper lookout; (2) failed to keep his automobile under control; and (3) drove to the left of the center of the highway, each of which acts was a proximate cause of the collision. Plaintiff's damages were assessed at $35,000 for personal injuries and $2,200 for property damage.

However the jury found that appellant Baumler was guilty of contributory negligence in (1) failing to turn his automobile to the right immediately prior to the collision; and (2) driving at a greater rate of speed than was prudent under the circumstances, each of which acts was a proximate cause of the collision.

Appellant's motion asking the court to disregard the jury's answers to the contributory negligence issues was overruled. Appellee's motion for judgment on the jury's verdict was sustained. Judgment was rendered that neither party recover from the other.

### Facts.

At the trial the only eye witness to the collision who testified was appellant; and because of the Dead Man's Statute, Art. 3716, Vernon's Ann.Civ.St., he was not permitted to tell of the collision. Both sides had to depend on circumstantial evidence to support their allegations in regard to the collision itself. The jury, as a basis for its findings as to negligence and proximate cause, had to rely on evidence showing the physical aspects of the highway before and after the collision, and the condition and location of the two automobiles, and of the drivers of the two automobiles.

The highway in the vicinity where the collision occurred is a straight, level, con-

crete road running north and south, built on fill-in dirt through river bottom land, flanked by a fairly deep ditch on each side. At the time of the accident it was a two-lane highway, the width of each lane being close to the width of two automobiles. There were shoulders on the side of each lane, each shoulder being wide enough to permit a car to be parked wholly on the shoulder. A painted stripe ran along the center of the road.

The collision took place June 24, 1954 at about 1:30 o'clock in the morning. Appellant Baumler was driving a comparatively new 1954 Ford Victoria automobile in a northerly direction toward his home in Lewisville, Texas, in Denton County. Hazelwood was driving a 1941 Dodge Coupe in a southerly direction toward the City of Dallas.

Both cars after the collision came to rest in the ditch on the west side of the highway. Appellant's Ford was facing west and slightly south, with its rear toward the highway. The testimony is not entirely in agreement as to whether Hazelwood's Dodge came to rest in the ditch facing due south, or with its nose pointed toward the highway slightly to the north. A deputy sheriff who arrived on the scene a few minutes after the accident testified that he found appellant's Ford resting in the ditch on the west side of the highway 66 steps north of the point where he found the heaviest debris. Hazelwood's Dodge was in the ditch on the west side of the highway 33 steps south of the same point. The witness stated that each of his steps was 32 to 36 inches long.

The force of the impact was obviously very great, as was attested by the condition of the automobiles. The impact, judging from the damage, was at or near the left front wheel of each car. Pictures indicate that each left front wheel was practically demolished. The left front side of Hazelwood's Dodge was crushed into a jumbled mass of metal. The same may be said of the left front side of the appellant's Ford.

However the damage to a somewhat lesser degree extended all along the length of the left side of the Hazelwood's Dodge, while the left rear side of appellant's Ford, so far as the pictures show, was undamaged.

The accident occurred in June 1954. The trial took place in March 1959, nearly five years later. It is not surprising that some of the witnesses, testifying from memory, were not certain as to some details.

Billy Gober, who was 16 years old at the time of the accident, was driving north along the highway a short distance back of appellant. He did not witness the collision. By the time he arrived at the scene the cars had already "settled, and the dust and stuff was still in the air though; you could still smell the dust." He parked his car on the east shoulder and walked to the scene. He testified "There was a mark, it looked like a frame or some metal object, was dragging the ground, and at an angle off to the left"—that is to the west. Gober also testified that he saw dirt and glass on each side of the road; also that he saw skid marks on both sides of the road and that the skid marks on the west side, north of the debris, were not as long as the skid marks on the east side south of the debris. Gober was the only witness who testified that he saw skid marks.

The jury found, and there is circumstantial evidence to support the finding, that immediately prior to the collision Hazelwood operated his car so that a portion of it extended to the left side of the center stripe of the highway.

The testimony of the witnesses was not in entire agreement as to the physcial facts from which it might be inferred how close to the center stripe the actual impact took place. Henry Campbell, the deputy sheriff who arrived soon after the collision, testified that the point of impact seemed to be at about the center stripe. We quote from his testimony:

"A. Sir, we found glass, and immediately each way behind the glass

some dirt and droppings from under the fenders, and that is, as I remember, what helped me establish the point of impact, the center of that mass of glass.

"Q. Where did you establish the point of impact, Mr. Campbell? A. Almost directly on the center stripe of the road.

"Q. And how did you arrive at that? A. Because the glass had dropped from this, supposed point of impact that I had determined on, glass had dropped both ways from it, and on the center stripe seemed to be about or near the point of impact, as I could determine.

"Q. Did you at that time, Mr. Campbell, did the gouge marks that you are talking about, were they on the west side of the center line? That would be the—A. Yes, sir, the gouge marks and the drag marks that I could see on the pavement, sir, were all to the west side of the center line as far as I could tell.

"Q. All right, sir. Was there any more debris on one side than there was on the other, as far as you could determine? A. You mean of the center line, sir?

"Q. Yes, sir. A. Most of the debris, sir, seemed to be on the west side of the highway, toward where the cars had both gone into the ditch."

On the other hand the witness Perry, called by appellant, placed the impact two and a half to three feet to the east of the center stripe. We quote from his testimony:

"Q. Mr. Perry, did you pay any particular attention to the pavement, the area there where the accident occurred? A. The first trip there I looked over it quickly, yes.

"Q. All right, sir, and I want to ask you this: Describe the best you can, just what you saw there on the pavement, where the two cars collided, that is near? A. Well, you could see a lot of dirt and glass and rubbish and * *

"Q. I want to ask you, you say you could see a lot; was it spread over a wide area or a fairly small area? A. Well, you could see where the impact was, because there was water and oil and everything there, and there was part of the chrome scattered, I would say 12 or 14 or 20 feet.

"Q. Now, where was that, where would you say the impact was? A. I would say two and a half to three feet on the east side of the center stripe."

Gene Gauss arrived at the scene soon after the collision occurred. He is a commercial photographer who stays on the alert for police and sheriff radio reports of accidents. It is his practice to go at once to the site and make pictures, which he afterwards sells to interested parties. In this case he made a number of pictures, which he identified and which were introduced in evidence without objection.

One of these pictures, Exhibit No. D-15, was taken with the camera pointed south on the highway. It shows a gouge mark on the highway beginning at the center stripe curving slightly and for a short distance to the east of the center stripe, then running in a curve to the west side of the center stripe, then continuing for several feet to a point in the west lane of the road apparently two feet or two and a half feet from the center stripe, at which point several markings or scars may be seen on the concrete. Other pictures, Exhibit Nos. D-8, to D-13, inclusive, taken from different locations, also show these markings on the concrete highway.

Mrs. Maurine Frazier, Hazelwood's daughter and the mother of two children, testified that at the time of the accident

she was living with her mother and father. She testified that Hazelwood's 1941 Dodge could not well be driven at a higher rate of speed than 40 miles per hour. We quote from her testimony:

"Q. Can you recognize this as your mother and father's Dodge automobile? A. Yes, sir.

"Q. Had you ever driven it yourself? A. Yes, sir.

"Q. Before this? Had you ever had occasion to try to get somewhere in a hurry in it? A. Yes, sir.

"Q. What was the occasion? A. I had to take my little sister to have her hand sewed up.

"Q. How long before the death of your father was that, approximately, Mrs. Frazier? A. Well, it was several months, or maybe more; I really don't know.

"Q. Where did you carry your little sister? A. It was to Dr. Bradford.

"Q. When you were driving the car, had you ever driven it before that? A. Some, when I was with my dad.

"Q. I will ask you, Mrs. Frazier, if in driving that car, how fast is the fastest that you were ever able to get it to run on that emergency call? A. Oh; on the average of 40.

"Q. And when it was running 40, how was it running? A. It was in strain then. * * *

"Q. You say that car would not go but 40 miles per hour? A. Well, if it did, I am sure that you would have a pretty hard time with it, because it was—it would shake you out of it going at 40.

"Q. Did you drive it as fast as it would go? A. I don't know that I did, I couldn't swear to it."

## Opinion.

In his first three points on appeal appellant asserts that there was no evidence, or in the alternative there was insufficient evidence to support the issues and jury's answers having to do with contributory negligence and proximate cause with reference to appellant's (1) failure to turn to the right, and (2) driving too fast; and (3) a new trial should have been granted because the jury's answers to the said special issues were against the overwhelming weight and preponderance of the evidence to such an extent as to indicate that the jury was motivated by some improper considerations.

■ It was appellee's burden to make out a case of contributory negligence with evidence sufficient to support the jury's answers. Appellant insists that appellee failed to discharge the burden. With reference to the ultimate facts relied on by appellee to support her charges of contributory negligence, appellant contends that the circumstances, if not in appellant's favor, are at least equally consistent with the existence or non-existence of such ultimate facts; therefore such circumstances amount to no evidence at all. Among the cases cited by appellant is Perren v. Baker Hotel, Tex.Civ.App., 228 S.W.2d 311 (Syl. 9).

■ The jury found that immediately prior to the collision a portion of Hazelwood's automobile extended to his left side of the center stripe of the highway. However, as appellee points out, that fact standing alone is not necessarily determinative of the issues of negligence and proximate cause in regard to the speed at which appellant was driving his car. In Biggers v. Continental Bus System, Inc., 157 Tex. 351, 303 S.W.2d 359, 364, our Supreme Court laid down the rule:

"We must and do reject Continental's contention that excessive speed can never be a proximate cause of a collision, occurring in the opera-

tor's own lane of traffic, with an automobile traveling in the opposite direction."

■ We are of the opinion that the evidence disclosed by this record does not support the jury's answers to the issues of negligence and proximate cause in regard to appellant's failure to turn his automobile to the right immediately prior to the collision. Of course the fact of the collision itself indicates that appellant did not turn to the right, or at least, did not turn in time to avoid the accident. And the evidence further shows that there was plenty of room to his right, including the wide shoulder of the road. But from the evidence it could also be inferred that Hazelwood, traveling south, drove his Dodge suddenly and momentarily slightly onto the east side of the center stripe. We believe the evidence is insufficient to show that appellant could have turned to the right, or had the opportunity, under the circumstances, to take the evasive action of turning to the right and thus avoiding the collision.

It is true that Billy Gober testified that he saw skid marks approaching the debris on each side of the highway from the north and south respectively. However he made a hasty examination of the scene under what seem to have been inadequate lights. He is the only witness to testify that he saw skid marks, though several witnesses made a more careful examination than he under better lights. Further, Gober testified that the skid marks on the east side of the road, appellant's side, were 15 or 20 feet long. If appellant was traveling at a high rate of speed, and there is evidence that he was, the testimony of the skid marks, even if true, is insufficient under the circumstances as a basis to infer that appellant had time or opportunity to avoid the collision by turning to the right.

Appellant's first two points on appeal are sustained in so far as they concern the insufficiency of the evidence to support the jury's answer to negligence and proximate cause with respect to appellant's failure to turn to the right.

■ We overrule appellant's third point, for we are unable to agree with appellant that the verdict was so against the weight of the evidence as to show that the jury was motivated by improper considerations.

■ We do not agree with appellant when he says that there is no evidence or that there is insufficient evidence to support the jury's finding that appellant was traveling at a negligent rate of speed, which was a proximate cause of the collision. As we have said, the force of the impact was obviously very great. The evidence shows that appellant's car travelled twice as far as Hazelwood's car after the collision. Appellant in his brief says that this fact means nothing, as the extent of his injuries was such that he was unable to apply the brakes or do anything to control the car. But the same thing or more, can be said of Hazelwood, who was also badly injured. In fact the witnesses who were on the scene soon after the collision testified that Hazelwood seemed already to be dead by the time they got to him.

Moreover there is the evidence of Hazelwood's daughter who said she had often driven Hazelwood's car, a 1941 Dodge Coupe, which was 13 years old at the time of the accident. She testified that the Dodge could not be driven at a speed in excess of 40 miles per hour without strain and discomfort. This testimony, if believed, tends to refute appellant's contention that the violence of the impact, and the damage done to the cars, give no indication as to which of the two automobiles was moving at the greater rate of speed at the time of the collision.

We overrule appellant's first two points insofar as they assert that there was no evidence, or that there was insufficiency of the evidence to support the jury's answers in regard to appellant's negligent speed.

Appellant presents a fourth point on appeal based on alleged misconduct of the jury. However the testimony of the jurors at the hearing on the motion for new trial raised fact issues as to whether the alleged acts of misconduct occurred. The court by overruling the motion for new trial in effect found against appellant as to these fact issues, and such finding is binding on this court.

We have held that the evidence is sufficient to uphold the jury's answers in support of contributory negligence on the part of appellant in the matter of the speed at which he was driving his car. Therefore we must affirm the trial court's judgment.

The judgment is affirmed.

CRAMER, J., not sitting.