**Joe CICCARELLO, Appellant,**

v.

**Mrs. Ruth Duncan GRAHAM, Appellee.**

No. 18893.

United States Court of Appeals
Fifth Circuit.

Dec. 21, 1961.

Willard I. Boss, Hicks, Dollahon, Boss & Wohlt, Houston, Tex., for appellant.

Albert P. Jones, Houston, Tex. (Shirley M. Helm, Helm, Jones, Pletcher & Winkelman, Houston, Tex., of counsel), for appellee.

Before TUTTLE, Chief Judge, and HUTCHESON and RIVES, Circuit Judges.

RIVES, Circuit Judge.

The defendant below appeals, attacking as clearly erroneous the finding of the district court, sitting without a jury, that negligence of the defendant was a proximate cause of an intersection accident in which the plaintiff was seriously injured.

The facts are almost undisputed except for one crucial point—which vehicle ran the red light? Both parties were traveling on Holcombe Boulevard in Houston, Texas, in a heavy rain, at about 12:25 A.M. on March 28, 1957. The defendant Ciccarello was driving a tractor-trailer truck loaded with vegetable produce which he was taking from Tampa, Florida, to Corpus Christi, Texas. The plaintiff, Mrs. Graham, was a passenger in a 1956 Ford driven by one Aylesworth, and was on her way home from the Shamrock Hotel after an evening of dining and dancing. The two vehicles were approaching the intersection of Holcombe and Main from opposite directions on Holcombe, and each driver desired to

make a left turn at the intersection so as to proceed in opposite directions on Main. Holcombe is a six lane street, three lanes in each direction, divided by a narrow grass esplanade with no indentations for the left turn lane; in other words, if each vehicle had proceeded straight ahead in its left-hand turn lane, they could not have collided. When the collision occurred, the truck had proceeded a short distance out into the intersection, but had not yet crossed the center line of Main. The car was all the way into the intersection and collided left front to left front with the truck in that quadrant of the intersection nearest to where the truck would normally stop for a red light. The traffic lights at this intersection were so staggered that only one direction of traffic moved at a time. Starting with the defendant, his direction had an eleven second green light followed by a three second amber light. When his light turned red, the plaintiff's direction turned green for seventeen seconds, to be followed in turn by the two directions on Main. Since under this arrangement two directions of traffic should not be in the intersection at once, the question is which of these parties had a red light.

The testimony of the parties is in direct conflict. The police officer who investigated the accident pointed out that he could not prefer criminal charges against either driver since he found no independent witnesses to prove guilt. The plaintiff Mrs. Graham testified that Aylesworth proceeded up to the intersection in a cautious manner in the left-hand turn lane at about 15 to 18 miles per hour, with his directional signal indicating a left turn. She stated unequivocally that they had a green light, and that at no time did she even see a red light. The truck then loomed up in the intersection before Aylesworth or she could do anything about it. Aylesworth did not testify at the trial, but his statement

to the investigating police officer was introduced. While unenlightening on the traffic light question, it definitely indicates his inattention at the time of the accident.[1] The defendant Ciccarello testified that his light was red when he reached the intersection. But, just as he came to a stop, the light turned green, so he flipped his turn signal and started into the intersection. About this time he saw the Aylesworth car coming from the other direction on Holcombe at 35 to 40 miles per hour, according to his best estimate. When he observed the car start to skid some 50 feet away, he came to a stop in the intersection, and the impact occurred when the Aylesworth car skidded into him. An independent witness, one Blakely, who was driving a car two-car lengths behind the truck, testified on behalf of the defendant. Blakely was first contacted about the accident shortly before trial some three years after the accident. (He had returned to the scene after the accident and told the gas station attendant at the corner of Holcombe and Main that he had observed the accident.) His testimony clearly reflects his difficulty in remembering the scene in any detail, and where it is explicit, it conflicts as much with the defendant as it does with the plaintiff. He conflicts with the defendant when he testifies that the truck's turn signal went on half a block from the intersection, that the truck had a green light when it arrived at the intersection, and that there were no other cars on the road except the two involved in the accident and his own. He conflicts with the plaintiff when he states that the truck had a green light when it reached the intersection. He conflicts with everyone when he states that it was only "misting" slightly and not raining hard.

[1] On the basis of such a record, issues of credibility must be resolved. If the defendant had a green light when

---

1. "Officer, I really don't know what happened. I'm not familiar enough with the town to even know what street I was on. I know I started to turn then saw the truck. I believe I had a green light for

I don't make a practice of running red lights. I wasn't going very fast, maybe 25–30 mph. I've had a couple of bourbon mixed drinks tonight."

he entered the intersection, it must be assumed that the plaintiff is completely untruthful, since her light could not turn green until the defendant's had turned red. If the plaintiff had a green light, then the defendant's light must have just turned red. In view of the short green light in the defendant's direction, only eleven seconds, he might have tried to beat the light instead of bring his heavy truck to a sudden halt on the wet pavement when the light unexpectedly turned yellow and then red. Whatever actually took place, we are of the opinion that there is sufficient evidence in the record for the trier of fact to decide the case either way, depending upon his resolution of these disputed issues and his observation of the witnesses. Under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., credibility is recognized as the prerogative of the trier of fact, and the appellate courts have ruled often that the trier's judgment is final in the absence of a clear mistake, a misinterpretation of the applicable law, or a preponderance of consistent and inherently probable evidence contrary to his finding. See Sanders v. Leech, 5 Cir., 1946, 158 F.2d 486; Prudential Ins. Co. of America v. Carlson, 10 Cir., 1942, 126 F. 2d 607; Jackson v. United States, 3 Cir., 1952, 196 F.2d 725.

■ The defendant admits this well-settled rule, but, on the basis of Mazzella Blasting Mat Co. v. Vitiello, 2 Cir., 1957, 250 F.2d 935, argues that weight may not be given to the trier's resolution of credibility in this case because he waited five months before filing a memorandum opinion. In Mazzella, the court observed:

"We commend the District Judge's immediate attention to the preparation of his opinion and decision which was filed fifteen days after the conclusion of the testimony. With the testimony still fresh in mind, the District Judge has stated his impressions of the credibility of the witnesses who appeared before him. His judgment of the witnesses, given before the passage of time had dimmed the memory of what can never be adequately preserved by a stenographic record, is thus entitled to great weight." 250 F.2d 935.

The defendant argues that, where the judge waits five months, his determinations of credibility should be discounted. First, Mazzella was a two-paragraph per curiam opinion, and it appears to us that the cited portion was more in the nature of a commendation of the trial judge than the considered exposition of a new rule of law. But, more important, the defendant's proposed rule is clearly unworkable. For if the trier of fact does not determine credibility, no one can. Analysis of the cold record can never equal a first-hand observation of the witness' demeanor on the stand; as a substitute, the appellate court cannot add up the witnesses or the pages of testimony in support of each party and declare the one with the most the winner. Nor can we begin to inquire into the trial judge's method of decision. He may have made notes at the conclusion of the trial, giving his determination of the disputed issues of fact, and then let five months slip by before he found an opportunity to reduce them to finished opinion form; or he may have needed time to research other issues of law. Are we to probe his mind and sequester his notes over an issue we are not qualified to decide in any event? At most, if we had affirmative evidence that the trier of fact had prejudiced the defendant by abusing his discretionary powers in handling the case, we could order a new trial. Under the facts of this case, however, we are unable to say that the trial judge abused his discretion by delaying entry of his opinion for five months; nor can we conclude that his findings are clearly erroneous.

If we do not disturb the finding that the defendant ran the red light, it is uncontested that his negligence was a proximate cause of plaintiff's injuries. Since the plaintiff was a guest passenger in the 1956 Ford, Aylesworth's concurrent negligence is not a bar to her recovery against the defendant. The judgment of the trial court should be, and hereby is,

Affirmed.