**Elmer THORNTON, Appellant,**

**v.**

**Alfonso P. CAMPISE, Appellee.**

**No. 382.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Oct. 21, 1970.

Rehearing Denied Nov. 9, 1970.

Alice Giessel, Talbert, Giessel, Barnett & Stone, Houston, for appellant.

John B. Murphrey and W. James Kronzer, Brown, Kronzer, Abraham, Watkins & Steely, Houston, for appellee.

TUNKS, Chief Justice.

This is a controlled intersection collision case. The collision occurred when a truck being driven by Elmer Thornton, defendant in the trial court and appellant here, made a left turn at an intersection and was struck by an on-coming automobile being driven by Alfonso P. Campise, plaintiff in the trial court and appellee here. Campise's minor son, Paul, was also a party plaintiff and Thornton's employer, Alamo Cartage Co. was a defendant in the trial court. Alfonso P. Campise took a non-suit as to Alamo Cartage and Paul Campise recovered judgment against Thornton and Alamo Cartage, jointly and severally. Alfonso Campise recovered judgment against Thornton only. No appeal was taken from the judgment in favor of Paul Campise. Appeal was taken from the judgment in favor of Alfonso P. Campise so that he and Thornton, appellee and appellant respectively, are the only parties to this appeal. For convenience and clarity the parties here sometimes will be designated as plaintiff and defendant, the positions which they occupied in the trial court.

The collision in question occurred in Houston at the intersection of Telephone Road and the inbound service road of the Gulf Freeway. Telephone Road runs generally north and south. At the intersection in question, Telephone Road has three lanes for northbound traffic and three lanes for southbound traffic. The in bound service road of the Gulf Freeway has three traffic lanes and is one way for traffic going west or toward downtown Houston. It lies parallel to and north of the Gulf Freeway. The traffic at the intersection is controlled by traffic lights, the stop and caution signals being the usual red and amber lights, and the go signals being green lighted di-

rectional arrows. There is an overpass on Gulf Freeway over Telephone Road.

Before the collision the defendant had been driving north on Telephone Road. He stopped for a red light at the intersection of Telephone Road and the outbound service road which lies parallel to and south of the Gulf Freeway and is a one-way street for traffic going east. He was in the inside traffic lane on Telephone Road, the lane nearest the center line. There was one car stopped ahead of him. When his light turned green he continued driving north under the overpass. Under the overpass the north and south traffic lanes on Telephone Road are separated by a narrow esplanade.

The testimony of the defendant relative to this appeal was that as he was proceeding north approaching the intersection he turned on his left turn signal, that as he entered the intersection he was faced with a lighted green arrow traffic signal pointing to his left, that he turned to his left and when he had about completed his turn his truck was struck by the plaintiff's southbound car, that he did not see the plaintiff's car before the collision, that he had shifted to and was still in second gear and that he was going 15 to 20 m. p. h. at the time of the collision.

Before the collision the plaintiff had been driving south on Telephone Road. His son, Paul, and his son's friend, Luke Campbell, were passengers in his car. His testimony as to the matters relevant to the issues of this appeal was as follows: he was traveling 20 to 25 m. p. h., he was following another car three or four car lengths ahead of him. As he approached the intersection the light was red but turned green before he reached the intersection. At one point in his testimony he said his light turned green just before he reached the intersection, at another time he said the light turned green when he was 100 feet away and on deposition he testified that the light turned green when he was 40 feet away. The car in front of

him went on through the intersection. He, the plaintiff, did not slow down for the red light. He testified that when he first saw the truck it was coming toward him but he thought it was going to continue straight on through the intersection. Instead the truck made a left turn in front of him and he was unable to stop quickly enough to avoid the collision.

The significant testimony of Luke Campbell was that the plaintiff was driving 30 m. p. h., that he slowed down before entering the intersection and that the traffic signal showed a green straight-ahead arrow when plaintiff entered the intersection.

Paul Campise testified that his father was driving 28 to 30 m. p. h., that their light turned green when they were 30 feet from the intersection and that they slowed down but did not stop before entering the intersection.

A police officer investigated the accident. He fixed the point of impact at 16 feet east of the center line of Telephone Road and 23 feet south of the extension of the north curb line of the inbound service road. The defendant's truck was 26 feet long and was struck on its right side at a point estimated by the officer to be six to nine feet from its front. The officer testified that the plaintiff's car left 20 feet of skid marks which "started a few feet back from the beginning of the intersection." There were not, however, 20 feet of skid marks extending back from where the plaintiff's car came to rest and the officer testified that the skid marks were from both front and rear wheels, indicating that the car had skidded ten feet. The car hit the truck with sufficient force to knock it 14 feet sideways. The plaintiff's car traveled 19 feet after the collision. The officer estimated the plaintiff's speed at 30 m. p. h.

In response to special issues the jury found that the defendant made the left turn when he did not have a green left-hand turn arrow and that he failed to keep

a proper lookout. Each of those findings of negligence was found to be a proximate cause of the collision. The jury did not find that the defendant failed to make a *proper application of his brakes.* The jury also failed to find that the plaintiff entered the intersection when he did not have a green arrow permitting such movement but did find that the plaintiff failed to keep a proper lookout and that such failure was a proximate cause of the collision. On motion of the plaintiff, the trial court disregarded the jury's findings as to the plaintiff's proper lookout and rendered judgment for plaintiff for his damages as fixed by the verdict.

The defendant's brief states but two points of error. First, that the trial court erred in disregarding the jury's finding that the plaintiff failed to keep a proper *lookout* and second that the trial court erred in disregarding the jury's finding that such failure was a proximate cause of the collision. The plaintiff's brief states, alternatively to its reply points, three cross-points. The first and second are that the jury's finding as to plaintiff's lookout and proximate cause were against the weight of the evidence and the third cross-point relates to alleged jury misconduct. In passing on the appellant's points of error and the appellee's first and second cross-points we are governed by and have complied with the criteria set forth in Garza v. Alviar (Tex.Sup.Ct.), 395 S.W.2d 821.

 There are many cases reported by the Texas courts that support the proposition that a driver entering an intersection may be under a duty to keep a proper lookout and otherwise to use ordinary care even if he has the legal right of way. Most of those cases, however, involve the situation wherein the two vehicles involved in the collision approached the intersection from directions at a right angle to each other. There are significant differences between that situation and the one here involved where the two vehicles approached the intersection from opposite directions and one of them made a left turn in front of the car having the right of way to go through the intersection. In an intersection collision the driver with the right of way is under a duty to take evasive action (or his failure to take evasive action is negligence) only after the other driver without the right of way has done something which would alert a reasonably prudent person to the danger of a collision if evasive action is not taken. Skyline Cab Company v. Bradley, 325 S.W.2d 176, n. r. e. Also, as related to an intersection collision, the driver with the right of way ordinarily has a duty to keep a lookout for other vehicles entering the intersection and his failure to do so is negligence, but such failure to keep a proper lookout is a proximate cause of the collision only if such lookout would have revealed something on the part of the other vehicle that, if seen, would have alerted him to the danger of a collision at such time or distance that proper evasive action taken by him would have prevented it. That is to say, the situation must be such that the collision would not have occurred "but for" his failure to keep a proper lookout. Thus, in an intersection collision case, it is generally true that the failure of a driver with the right of way to keep a proper lookout is a proximate cause of the collision only if such driver is guilty of some other act or omission of negligence as to the taking of evasive action which other negligence caused the collision.

The movement of a car approaching the intersection at a right angle to the driver with the right of way may be such as to alert the driver with the right of way to the danger of a collision when the driver violating the right of way is at a substantial distance from the intersection. It is usually the speed of a car or its failure to slow down as it approaches the intersection which alerts one to the fact that it is likely to enter the intersection regardless of the right of way. On the other hand, when the driver of the two cars approach the intersection *from opposite directions* the driver violating the right of way by turn-

ing to the left usually makes the movement which should alert the other driver to danger only after the turning car is into the intersection. In this case, where the defendant's truck was turning into a one-way street, the alerting movement could be begun without crossing part of the intersecting street, but would still be done much nearer the intersection than would be the alerting movement of a car approaching at a right angle.

While most of the cases discussing the duty and negligence of a driver with the right of way approaching an intersection are right angle collision cases, there are a few cases involving collisions that have occurred when one of the two cars approaching the intersection from opposite directions made a left turn. In Cheramie v. Scott, 324 S.W.2d 87, n. r. e., a judgment in favor of the driver of the car turning left at an intersection against the driver of the car attempting to go straight ahead through the intersection, based on jury findings of negligence and proximate cause against the driver of the straight-ahead car, was affirmed. In that case, however, the facts were so substantially different from those here involved that it is clearly distinguishable. There the turning car was stopped at an intersection with its left turn signal on and waiting for a green light. Across the street and stopped at the intersection in the inside of three lanes for traffic proceeding in the opposite direction, was another car also waiting for its light to turn green and also with its left turn signal on. In the middle of the three lanes for traffic in the opposite direction a truck was stopped waiting for the green signal. The straight-ahead car was in the outside of the three lanes, 100 feet away from the intersection and nearly stopped. When the light turned green the turning driver began his turn and the truck remained stopped at the intersection despite the fact that its light, too, had turned green, thus permitting the turning driver to continue with his turn. The straight-ahead driver proceeded on into the intersection, passing to the right of the stationary truck when

the truck so obstructed his view that he could not see into the intersection. The turning car was almost out of the intersection when the collision occurred. The jury could have believed that the fact that the truck remained stationary when its light turned green should have alerted the straight-ahead driver to the danger of a collision in the intersection if he proceeded blindly into it.

In Adams v. Siefferman, Tex.Civ.App., 197 S.W.2d 506, no writ hist., the collision involved was between a turning car and one attempting to go straight ahead through an intersection, but the principal question with which the court was concerned was the negligence of the driver of the turning car. The court did say, by way of dictum, however, that the evidence raised a question of fact as to the negligence of the driver of the straight-ahead car. The opinion does not recite enough facts as to the conduct of the driver of the straight-ahead car to make it persuasive in this case.

In Ciccarello v. Graham (5th Cir.), 296 F.2d 858, a case involving Texas substantive law, the driver of the straight-ahead vehicle was found guilty of negligence, but it was found on sufficient evidence that he ran a red light. Other cases involving collisions between vehicles approaching an intersection from opposite directions and a left turn by one of them are noted in an annotation at 2 A.L.R.3d 132, but they are not helpful in deciding this case.

■ In this case the defendant testified that he turned on his left turn signal before he reached the intersection. Under the criteria of Garza v. Alviar, supra, in determining the "no evidence" questions presented by appellant's points of error, that fact must be taken as established. The plaintiff testified that he thought the defendant's truck was going straight on through the intersection. Again applying the controlling criteria, it must be assumed that the jury could have drawn the inference that the plaintiff did not see the de-

fendant's turning signal and thus did not keep that character of lookout as would have been kept by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances. There was, therefore, some evidence to support the jury's finding that the plaintiff did not keep a proper lookout. The trial court erred in disregarding such jury finding, but the holding of such error does not resolve this appeal. Unless the court also erred in disregarding the jury's finding that the plaintiff's failure to keep a proper lookout was a proximate cause of the collision, the noted error was harmless.

■ The evidence is not entirely clear as to the position of the defendant's truck when the defendant first activated his left turn signal but it apparently was done at some distance from the intersection. The question is thus presented as to whether the defendant's left turn signal, alone, was sufficient to alert the plaintiff to the fact that the defendant might make a left turn in violation of the plaintiff's right of way. If that signal alone was sufficient to alert the plaintiff to the danger it imposed upon him the duty to exercise ordinary care to avoid the collision and the failure to take evasive action made his failure to keep a proper lookout a proximate cause of the collision. Undoubtedly the plaintiff could have seen the turning signal at a time when he could have avoided the collision by evasive action. We are of the opinion that the turning signal alone was not sufficient to alert the plaintiff to the danger that the defendant might wrongfully turn in front of him and thus was not sufficient to give rise to his duty to take evasive action. To hold otherwise would recognize a rule which, if followed, would seriously impede the flow of the traffic on crowded city streets, where the traffic load is so delicately balanced as against the capacity of the streets.

In Prosser, the Law of Torts, 3rd Ed., at p. 174, appears the following language:

" * * * In general, where the risk is relatively slight, he is free to proceed upon the assumption that other people will exercise proper care. It would not be easy to move traffic if motorists could not assume that other cars will keep to the right, and drive accordingly; or that those who use the highway will be reasonably intelligent, competent and careful, and will look out for themselves. But when the risk becomes a serious one, either because the threatened harm is great, or because there is an especial likelihood that it will occur, reasonable care may deman precautions against 'that occasional negligence which is one of the ordinary incidents of human life and therefore to be anticipated.' 'It is not due care to depend upon the exercise of care by another when such reliance is accompanied by obvious danger.' "

Consistent with that language we hold that in this case the plaintiff's duty to take evasive action arose only when the defendant's truck began its movement of turning to the left. The defendant's left turn signal if seen would have put the plaintiff and other drivers near the intersection on notice that the defendant was going to turn, but not that he was going to turn illegally. It did not impose upon the plaintiff a duty to stop and yield his lawful right of way to an illegally turning vehicle. See Perkins v. Hale, 396 S.W.2d 149, n. r. e.; McCall v. Williams, 311 S.W.2d 743, n. r. e.

■ If the plaintiff's failure to keep a proper lookout was a proximate cause of the collision it must have been an actual cause thereof. That is to say it must have been negligence "but for" which the collision would not have occurred. As related to this case that well established rule of law means that for plaintiff's failure to keep a proper lookout to be a proximate cause of this collision he must have failed to see something that he should have seen and which would have alerted him to the danger that the truck might turn in front of him under such circumstances, consider-

ing time, distance and speed that he could have avoided the collision. As noted above, the first thing that could have so alerted the plaintiff was the start of the truck's left turn. On the issue as to the proximate cause of plaintiff's negligence, the defendant had the burden of proof. Controlling of appellant's second point of error is the answer to the question: was there any evidence from which the jury could have found that the plaintiff should have seen the truck begin its turning movement at such time when the plaintiff was at sufficient distance from the point of impact that he could have, at the speed he was going, taken evasive action which would have avoided the collision? We answer that question in the negative.

■ There is no direct evidence here as to where the plaintiff's car was at the time the defendant's truck began its turning movement. The defendant never saw the plaintiff's car before the collision. The plaintiff only said that when he saw the truck begin its turn he immediately applied his brakes and was unable to stop. Of course the jury was at liberty to disregard the plaintiff's testimony in that respect. But a disregard of this testimony does not constitute evidence that he would have been able to stop if he had seen the truck when it began its turn. R. T. Herrin Petroleum Transport Co. v. Proctor (Tex. Sup.Ct.), 338 S.W.2d 422.

■ It is true that the defendant was not required to discharge his burden of proof by direct evidence. He could discharge the burden by circumstantial evidence, but to do so there must have been evidence of facts from which the inference that the plaintiff could have seen the truck cross the center line when his car was far enough away to avoid the collision is stronger than the inference that the plaintiff was too close to avoid the collision. Dewhurst v. South Texas Rendering Co., Tex.Civ.App., 232 S.W.2d 135, n. r. e. The facts as to which there was evidence in this case include too many variables and leave too many unknown factors to constitute circumstances from which the jury could have established the position of the plaintiff's car at the time when he should have been alerted to danger. The estimates of the plaintiff's speed before he applied his brakes varied from 20 to 30 m. p. h. He was traveling at such speed that after his car slid ten feet it hit the truck with sufficient force to knock it sideways 14 feet and the momentum of his car carried it another 19 feet. Even if the outer limits of the estimates of plaintiff's speed be accepted there remains a variable in the estimate of the defendant's speed and an unknown as to the distance that the front end of the defendant's truck traveled after it crossed the center line of Telephone Road. The defendant estimated his speed at 15 to 20 m. p. h. The collision occurred when the front end of the truck was a maximum of 25 feet west of the center line of Telephone Road. At 15 m. p. h. the defendant would have traveled 25 feet in slightly more than a second and at 20 m. p. h. in slightly less than a second.

■ At whatever speed the jury could have believed the plaintiff was traveling, he obviously could not have stopped his car within one second from the time the truck's crossing of the center line should have alerted him to the danger. We may take judicial notice of the fact that three-fourths of that second would have been consumed by his reaction time. Dent v. Falvey, Tex.Civ.App., 371 S.W.2d 63, no writ hist. Of course we know that the truck traveled somewhat farther than 25 feet after crossing the center line because he was traveling in an arc, but that distance is one of the unknown factors involved in the circumstances of this case. Any conclusion of the jury that the plaintiff should have seen the truck begin its turn at a time when he could have avoided the collision, if the jury did so conclude, must necessarily have been based upon surmise and speculation and cannot be upheld. Upon somewhat similar reasoning the court in Polasek v. Quinius, Tex.Civ.App.,

438 S.W.2d 828, ref., n. r. e., an intersection collision case, held that there was no evidence that the driver with the right of way was guilty of negligence which was a proximate cause of the collision.

In view of the fact that we have overruled the appellant's second point of error, it becomes unnecessary for us to pass upon the appellee's cross-points. If it were necessary for us to rule upon those cross-points we would sustain appellee's second cross-point and hold that the jury's finding that the plaintiff's failure to keep a proper lookout was a proximate cause of the collision was against the weight of the evidence. Both our holding on appellant's second point of error and appellee's second cross-point make it unnecessary that we pass upon appellee's third cross-point.

The judgment of the trial court is affirmed.