EXXON CO., U. S. A., ET AL. *v.* SOFEC, INC., ET AL.

No. 95–129.   Argued March 19, 1996—Decided June 10, 1996

THOMAS, J., delivered the opinion for a unanimous Court.

*Shirley M. Hufstedler* argued the cause and filed briefs for petitioners.

*George Playdon* argued the cause for respondents. With him on the brief for respondents Pacific Resources, Inc., et al. were *James W. McCartney, Theodore G. Dimitry, Eugene J. Silva,* and *Richard H. Page. Kenneth W. Starr, Edward W. Warren, Richard A. Cordray, Randall K. Schmitt, David W. Proudfoot,* and *John R. Lacy* filed a brief for respondents Sofec, Inc., et al.*

JUSTICE THOMAS delivered the opinion of the Court.

In *United States* v. *Reliable Transfer Co.*, 421 U. S. 397 (1975), we abandoned the "divided damages" rule previously applied to claims in admiralty for property damages, and adopted the comparative fault principle for allocating damages among parties responsible for an injury. In this case we affirm that the requirement of legal or "proximate" causation, and the related "superseding cause" doctrine, apply in admiralty notwithstanding our adoption of the comparative fault principle.

I

This case arises from the stranding of a tanker, the *Exxon Houston*, several hours after it broke away from a Single Point Mooring System (SPM) owned and operated by the HIRI respondents and manufactured by respondent Sofec, Inc.[1] The *Houston* was engaged in delivering oil into HIRI's

_____

*Thomas J. Wagner* and *Chester D. Hooper* filed a brief for the Maritime Law Association of the United States as *amicus curiae.*

[1] The *Houston* was owned and operated by petitioner Exxon Shipping Company, whose vessels carried crude oil for petitioner Exxon Company, U. S. A. We will refer to both of these companies as Exxon. The HIRI

pipeline through two floating hoses, pursuant to a contract between Exxon and respondent PRII, when a heavy storm broke the chafe chain linking the vessel to the SPM. As the vessel drifted, the oil hoses broke away from the SPM. The parting of the second hose at approximately 1728 nautical time was designated below as the "breakout." The hoses were bolted to the ship, and a portion of the second hose remained attached to the ship. So long as the hose was attached to and trailing from the ship, it threatened to foul the ship's propeller, and consequently the ship's ability to maneuver was restricted.

During the 2 hours and 41 minutes following the breakout, the captain of the *Houston*, Captain Coyne, took the ship through a series of maneuvers described in some detail in the District Court's findings of fact. The District Court found that by 1803, a small assist vessel, the *Nene*, was able to get control of the end of the hose so that it was no longer a threat to the *Houston*. See 54 F. 3d 570, 572 (CA9 1995). Between 1803 and 1830, Captain Coyne maneuvered the *Houston* out to sea and away from shallow water. The District Court, and on appeal, a panel of the Court of Appeals for the Ninth Circuit, found that by 1830, the *Houston* had successfully avoided the peril resulting from the breakout. App. to Pet. for Cert. 65; 54 F. 3d, at 578–579. The ship had "reached a safe position," App. to Pet. for Cert. 64, and was "heading out to sea and in no further danger of stranding," *id.*, at 65; 54 F. 3d, at 578.

Many of Captain Coyne's actions after 1830 were negligent, according to the courts below. Most significant was his failure to have someone plot the ship's position between 1830 and 2004, a period during which the crews of the *Houston* and the *Nene* were working to disconnect the hose from the *Houston*. Without knowing his position, Captain Coyne

respondents are several affiliated corporations: Pacific Resources, Inc.; Hawaiian Independent Refinery, Inc.; PRI Marine, Inc.; and PRI International, Inc. (PRII).

was unable to make effective use of a navigational chart to check for hazards. The courts found that this failure to plot fixes of the ship's position was grossly and extraordinarily negligent. App. to Pet. for Cert. 61; 54 F. 3d, at 578. The District Court found that "Captain Coyne's decisions were made calmly, deliberately and without the pressure of an imminent peril." App. to Pet. for Cert. 60. His failure to plot fixes after 1830 "was entirely independent of the fact of breakout; he voluntarily decided not to plot fixes in a situation where he was able to plot fixes." *Id.*, at 64.

At 1956, Captain Coyne initiated a final turn toward the shore. Because he had not plotted the ship's position, Captain Coyne was unaware of its position until he ordered another crew member to plot the fix at 2004. Upon seeing the fix on the chart, the captain apparently realized that the ship was headed for a reef. Captain Coyne's ensuing efforts to avoid the reef came too late, and moments later the ship ran aground, resulting in its constructive total loss. The District Court found that Captain Coyne's decision to make this final turn "was not foreseeable." *Id.*, at 65.

Exxon filed a complaint in admiralty against the HIRI respondents and respondent Sofec for, *inter alia*, the loss of its ship and cargo. The complaint contained claims for breach of warranty, strict products liability, and negligence. HIRI filed a complaint against several third-party respondents, who had manufactured and supplied the chafe chain that held the tanker to the SPM.

Before trial, respondents suggested that Captain Coyne's conduct was the superseding and sole proximate cause of the loss of the ship, and they moved to bifurcate the trial. Respondents and the third-party respondents disputed among themselves the cause of the breakout, and they apparently sought bifurcation of the trial to avoid lengthy proceedings to resolve those factual disputes prior to a determination whether Captain Coyne's conduct was the superseding cause

of Exxon's injury. The District Court granted the motion, limiting the first phase of the trial to the issue of proximate causation with respect to actions taken after the breakout, and leaving the issue of causation of the breakout itself for the second phase.

Following a 3-week bench trial in admiralty, the District Court found that Captain Coyne's (and by imputation, Exxon's) extraordinary negligence was the superseding and sole proximate cause of the *Houston*'s grounding. *Id.*, at 63. The court entered final judgment against Exxon with respect to the loss of the *Houston*, and Exxon appealed.

The Ninth Circuit held that the District Court's findings "that Captain Coyne had ample time, as well as opportunity and available manpower, to take precautions which would have eliminated the risk of grounding, and that his failure to do so amounted to extraordinary negligence, superseding any negligence of the defendants with regard to the breakout or provision of safe berth after the breakout," were "well supported by the record," and not clearly erroneous. 54 F. 3d, at 579. The court rejected Exxon's contention that the captain's actions were foreseeable reactions to the breakout; rather, it noted, Captain Coyne himself had explained that he did not plot fixes "because he felt it was unnecessary to do so." *Id.*, at 578.

Relying upon Circuit precedent, the court rejected Exxon's legal argument that the doctrines of proximate causation and superseding cause were no longer applicable in admiralty in light of this Court's decision in *Reliable Transfer*. "[A]n intervening force supersedes prior negligence" and thus breaks the chain of proximate causation required to impose liability on the original actor, the court held, "where the subsequent actor's negligence was 'extraordinary' (defined as 'neither normal nor reasonably foreseeable')." 54 F. 3d, at 574. The court also rejected Exxon's argument that the District Court erred in rendering judgment against Exxon

on its breach of warranty claims. "Where, as here, the district court finds the injured party to be the superseding or *sole* proximate cause of the damage complained of, it cannot recover from a party whose actions or omissions are deemed to be causes in fact, but not legal causes of the damage." *Id.*, at 576. Finally, the court held that under the circumstances of the case, the District Court's bifurcation of the trial was not an abuse of discretion. We granted certiorari. 516 U. S. 983 (1995).

## II

Exxon makes four arguments for the reversal of the judgment below: (1) that the superseding cause doctrine does not or should not apply in admiralty; (2) that respondents' breaches of warranty were causes in fact of the loss of the *Houston* and hence respondents should be liable for that loss; (3) that the lower courts' finding that Captain Coyne's extraordinary negligence was the sole proximate cause of the loss of the *Houston* was in error; and (4) that the District Court abused its discretion and deprived Exxon of due process in bifurcating the issue of proximate causation from the other issues.

## A

Exxon's primary argument is that the proximate causation requirement, and the related superseding cause doctrine, are not or should not be applicable in admiralty. In particular, Exxon asserts that the lower courts' refusal to allocate any share of damages to parties whose fault was a cause in fact of Exxon's injury conflicts with our decision in *Reliable Transfer*.

We disagree. In *Reliable Transfer*, we discarded a longstanding rule that property damages in admiralty cases are to be divided equally between those liable for injury, "whatever the relative degree of their fault may have been," 421 U. S., at 397, and adopted the comparative fault principle in

its stead.[2]   The proximate causation requirement was not before us in *Reliable Transfer*, and we did not suggest that the requirement was inapplicable in admiralty.   (Nor, for that matter, did we consider whether the injury had been proximately caused by the defendant in that case.)

There is nothing internally inconsistent in a system that apportions damages based upon comparative fault only among tortfeasors whose actions were proximate causes of an injury.   Nor is there any repugnancy between the superseding cause doctrine, which is one facet of the proximate causation requirement, and a comparative fault method of allocating damages.   As Professor Schoenbaum has said:

> "The doctrine of superseding cause is . . . applied where the defendant's negligence in fact substantially contributed to the plaintiff's injury, but the injury was actually brought about by a later cause of independent origin that was not foreseeable.   It is properly applied in admiralty cases.
>
> ". . . [T]he superseding cause doctrine can be reconciled with comparative negligence.   Superseding cause operates to cut off the liability of an admittedly negligent defendant, and there is properly no apportionment of comparative fault where there is an absence of proxi-

---

[2] Some commentators have suggested that there may be a distinction between a system allocating damages on the basis of comparative culpability, and a system allocating damages on the basis of both comparative culpability and the degree to which fault proximately or foreseeably contributed to an injury.   W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts 474 (5th ed. 1984) (hereinafter Keeton); 1 T. Schoenbaum, Admiralty and Maritime Law § 5–4, p. 167 (2d ed. 1994); Owen & Whitman, Fifteen Years Under *Reliable Transfer*: 1975–1990, Developments in American Maritime Law in Light of the Rule of Comparative Fault, 22 J. Mar. L. & Com. 445, 476–483 (1991).   We continue to use the term "comparative fault" employed in *Reliable Transfer*, but we do not mean thereby to take a position on which of these systems is the appropriate one, assuming that there is in fact a distinction between them.

mate causation." 1 T. Schoenbaum, Admiralty and Maritime Law § 5–3, pp. 165–166 (2d ed. 1994).

Indeed, the HIRI respondents assert that of the 46 States that have adopted a comparative fault system, at least 44 continue to recognize and apply the superseding cause doctrine. Brief for HIRI Respondents 28, and n. 31; *id.*, at App. A (listing state-court decisions). Exxon does not take issue with this assertion and concedes that it is not aware of any state decision that holds otherwise. Tr. of Oral Arg. 10.

Exxon also argues that we should in any event eschew in the admiralty context the "confusing maze of common-law proximate cause concepts"; a system in which damages are allocated based upon the degree of comparative fault of any party whose act was a cause in fact of injury is "fairer and simpler," it says. Reply Brief for Petitioners 2. It is true that commentators have often lamented the degree of disagreement regarding the principles of proximate causation and confusion in the doctrine's application, see, *e. g.*, Keeton 263, but it is also true that proximate causation principles are generally thought to be a necessary limitation on liability, see, *e. g.*, *id.*, at 264, 293, 294, 312. Indeed, the system Exxon apparently proposes either would let proximate causation principles, with all of their complexity, creep back in as one factor in the "comparative fault" analysis itself, see n. 2, *supra*, or would produce extreme results. "In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond." Keeton 264. Nevertheless,

> "the careless actor will [not] always be held for all damages for which the forces that he risked were a cause in fact. Somewhere a point will be reached when courts will agree that the link has become too tenuous—that what is claimed to be consequence is only fortuity. Thus, if the [negligent] destruction of the Michigan Avenue Bridge had delayed the arrival of a doctor, with con-

sequent loss of a patient's life, few judges would impose liability." *Petition of Kinsman Transit Co.,* 338 F. 2d 708, 725 (CA2 1964), quoted in 1 Schoenbaum, *supra,* § 5–3, at 164.

In ruling upon whether a defendant's blameworthy act was sufficiently related to the resulting harm to warrant imposing liability for that harm on the defendant, courts sitting in admiralty may draw guidance from, *inter alia,* the extensive body of state law applying proximate causation requirements and from treatises and other scholarly sources. See Keeton 279 ("'The best use that can be made of the authorities on proximate cause is merely to furnish illustrations of situations which judicious men upon careful consideration have adjudged to be on one side of the line or the other'") (quoting 1 T. Street, Foundations of Legal Liability 110 (1906)).

## B

Exxon's argument that the District Court erred in rendering judgment against Exxon on its breach of warranty claims fares no better. Exxon implicitly argues that because the respondents breached various contractual warranties, they were "best situated" to prevent the loss of the *Houston;* and Exxon invokes a passage from *Italia Societa per Azioni di Navigazione* v. *Oregon Stevedoring Co.,* 376 U. S. 315 (1964). In *Italia Societa,* we held that a stevedore breaches its implied warranty of workmanlike service to a shipowner when the stevedore nonnegligently supplies defective equipment that injures one of its employees during stevedoring operations. That case does not purport to deal with the proximate causation limitation for damages on a warranty claim and is not relevant to the question presented here.

We agree with the Ninth Circuit that where the injured party is the sole proximate cause of the damage complained of, that party cannot recover in contract from a party whose breach of warranty is found to be a mere cause in fact of the damage. Although the principles of legal causation some-

times receive labels in contract analysis different from the "proximate causation" label most frequently employed in tort analysis, these principles nevertheless exist to restrict liability in contract as well. Indeed, the requirement of foreseeability may be more stringent in the context of contract liability than it is in the context of tort liability. See *East River S. S. Corp.* v. *Transamerica Delaval Inc.*, 476 U. S. 858, 874–875 (1986); Restatement (Second) of Contracts § 351 and Comment *a*, pp. 135–136 (1979); 11 W. Jaeger, Williston on Contracts § 1344, pp. 227–228 (3d ed. 1968); 5 A. Corbin, Corbin on Contracts § 1008, pp. 75–76 (1964); *id.*, § 1019, at 113–116; cf. 3 E. Farnsworth, Contracts § 12.14, pp. 241–243 (1990) (*Hadley* v. *Baxendale,* 9 Ex. 341, 156 Eng. Rep. 145 (1854), "impose[s] a more severe limitation on the recovery of damages for breach of contract than that applicable to actions in tort or for breach of warranty, in which substantial or proximate cause is the test"). The finding that Captain Coyne's extraordinary negligence was the sole proximate cause of Exxon's injury suffices to cut off respondents' liability for that injury on a contractual breach of warranty theory as well.

## C

The legal question that we took this case to address is whether a plaintiff in admiralty that is the superseding and thus the sole proximate cause of its own injury can recover part of its damages from tortfeasors or contracting partners whose blameworthy actions or breaches were causes in fact of the plaintiff's injury. As we have held above, the answer is that it may not. Apparently anticipating that this legal issue would not likely be resolved in its favor, Exxon devotes a large portion of its briefs to arguing that the findings by the lower courts that Captain Coyne's extraordinary negligence was the sole proximate cause of Exxon's injury were in error. The issues of proximate causation and superseding cause involve application of law to fact, which is left to the

factfinder, subject to limited review. See, *e. g.*, *Milwaukee & St. Paul R. Co.* v. *Kellogg*, 94 U. S. 469, 473–476 (1877); Keeton 320–321; 5 Corbin, *supra*, § 998, at 22–23. "A court of law, such as this Court is, rather than a court for correction of errors in fact finding, cannot undertake to review concurrent findings of fact by two courts below in the absence of a very obvious and exceptional showing of error." *Graver Tank & Mfg. Co.* v. *Linde Air Products Co.*, 336 U. S. 271, 275 (1949); see also *Goodman* v. *Lukens Steel Co.*, 482 U. S. 656, 665 (1987); *Reliable Transfer*, 421 U. S., at 401, n. 2. Although Exxon identifies some tension in the various findings made by the courts below,[3] we nevertheless conclude that Exxon has not made an "obvious and exceptional showing of error" that would justify our reversal of the courts' ultimate conclusion, reached after a 3-week trial and review of a lengthy and complex record. Without necessarily ratifying the application of proximate causation principles by the courts below to the particular facts here, we decline to reconsider their conclusion.

## D

Finally, Exxon argues that the District Court erred in bifurcating the trial. This issue is not within the questions

---

[3] Exxon argues that the courts' findings—that by 1803, the *Nene* had gained control of the end of the hose so that it was no longer a threat to the *Houston*, and that by 1830, the *Houston* had successfully avoided the peril resulting from alleged breaches of duty on respondents' part, had "reached a safe position," and was "heading out to sea and in no further danger of stranding"—are inconsistent with the apparently uncontested finding that the hose, which was suspended from the ship's crane during efforts to disconnect the hose from the ship, caused the crane to topple at 1944, injuring a crewman. We note in this regard that the District Court expressly found that the captain's failure to plot fixes after 1830 "was entirely independent of the fact of breakout" and that "he voluntarily decided not to plot fixes in a situation where he was able to plot fixes," App. to Pet. for Cert. 64; the Court of Appeals also relied upon the fact that Captain Coyne himself had explained that he did not plot fixes "because he felt it was unnecessary to do so," 54 F. 3d 570, 578 (CA9 1995).

upon which we granted certiorari. See Pet. for Cert. i. To the extent that Exxon argues that the issue involved here— whether one cause of injury is a superseding cause—can never be bifurcated from other issues, we reject that contention. Again, Exxon relies upon *Reliable Transfer* in asserting that the fault of all parties must be considered together in order that they may be compared. As explained above, that argument is wrong: A party whose fault did not proximately cause the injury is not liable at all. To the extent that Exxon argues that the District Court abused its discretion in dividing the trial in the particular way that it did here, we decline to address that argument.

The judgment is affirmed.

*It is so ordered.*