# Supreme Court of Texas

No. 23-0493

Werner Enterprises, Inc. and Shiraz A. Ali,

*Petitioners*,

v.

Jennifer Blake, individually and as next friend for Nathan Blake, and as heir of the estate of Zackery Blake, deceased; and Eldridge Moak, in his capacity as guardian of the estate of Brianna Blake,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

**Argued December 3, 2024**

CHIEF JUSTICE BLACKLOCK delivered the opinion of the Court, in which Justice Devine, Justice Busby, Justice Young, and Justice Sullivan joined.

JUSTICE YOUNG filed a concurring opinion, in which Justice Huddle joined.

JUSTICE BLAND filed an opinion dissenting in part, in which Justice Boyd and Justice Huddle joined.

Justice Lehrmann did not participate in the decision.

A negligent actor incurs liability only for damages proximately caused by his negligence. Proximate cause is not established merely by proof that the injury would not have happened if not for the defendant's negligence. Instead, proximate cause requires, among other things, proof that the defendant's negligence was a substantial factor in causing the injury. The substantial-factor requirement incorporates "the idea of responsibility" into the question of causation. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991) (quoting RESTATEMENT (SECOND) OF TORTS § 431 cmt. a (AM. L. INST. 1965)). Thus, even if the defendant's negligence is part of the causal chain of events that led to the injury, the defendant is not liable if his involvement was a mere "happenstance of place and time." *Id.* Instead, the substantial-factor requirement means that liability falls only on a party whose substantial role in bringing about the injury is such that he is "actually responsible for the ultimate harm." *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 224 (Tex. 2010). Liability does not fall on other participants in the causal chain whose actions merely "created the condition which made the injury possible." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 803 (Tex. 2004).

These principles require judgment for the defendants in the terrible circumstances of this highway-collision case. The driver of a pickup truck traveling too fast on an icy, divided interstate highway suddenly lost control, hurtled across a 42-foot-wide median, and collided with the defendant's 18-wheeler before the defendant had time to react. The collision killed one of the pickup's occupants and severely injured three others. The plaintiffs proved at trial that, if not for the

2

18-wheeler's speed, which was below the speed limit but still unsafe for the icy conditions, the accident likely would not have occurred or the injuries would have been less severe. We must conclude, however, that this proof is insufficient to establish that the defendant's negligence was a substantial factor in bringing about the plaintiffs' injuries. The defendant's presence on the highway, combined with his speed, furnished the condition that made the injuries possible, but it did not proximately cause the injuries. Rather, the sole proximate cause of this accident and these injuries—the sole substantial factor to which the law permits assignment of liability—was the sudden, unexpected hurtling of the victims' vehicle into oncoming highway traffic, for which the defendants bore no responsibility.

To assign legally significant causal force—that is, proximate causation—to any other human factor in this accident would be to distort the tragic reality of what transpired. This awful accident happened because an out-of-control vehicle suddenly skidded across a wide median and struck the defendant's truck, before he had time to react, as he drove below the speed limit in his proper lane of traffic. That singular and robustly explanatory fact fully explains why the accident happened and who is responsible for the resulting injuries. Because no further explanation is reasonably necessary to substantially explain the origins of this accident or to assign responsibility for the plaintiffs' injuries, the rule of proximate causation does not permit a factfinder to search for other, subordinate actors in the causal chain and assign liability to them. Compared to the central and defining fact about this accident's cause—the pickup careening across a wide median into

3

oncoming interstate-highway traffic—anything the defendant did or didn't do to contribute to the possibility of such an accident is too attenuated to qualify as the substantial factor necessary for proximate causation.

Because our holding regarding proximate cause requires judgment for the defendants, we do not reach any other issues. The judgment of the court of appeals is reversed, and judgment is rendered in favor of the defendants.

**I.**

On the afternoon of December 30, 2014, Trey Salinas was driving his F-350 pickup with four passengers—Jennifer Blake and her three children—on I-20 eastbound near Odessa. That morning, the National Weather Service issued a winter weather advisory indicating that ice was likely to accumulate on the roads and cause hazardous driving conditions. The temperature dropped below freezing in Odessa around 9:30 a.m. At 2:50 p.m., the National Weather Service updated its advisory to say that freezing rain had begun and that temperatures would remain below freezing all afternoon.

Testimony from a driver behind Salinas suggested that Salinas was driving approximately 50-60 miles per hour when he lost control of his pickup at approximately 4:30 p.m. In the course of two to three seconds, Salinas's F-350 left I-20 eastbound, crossed the 42-foot grassy median, entered traffic on I-20 westbound, and collided with a Werner Enterprises 18-wheeler driven by Shiraz Ali. Ali was a driver in training with Werner. His trainer, Jeffrey Ackerman, was in the 18-wheeler's sleeper berth. Ali testified that as soon as he saw Salinas's truck, he

4

"pressed on the brake as hard as [he] could." The plaintiffs' expert witness testified that Ali's split-second reaction to the oncoming vehicle "was appropriate to the conditions that he saw coming up ahead of him." Nevertheless, the vehicles collided, killing one of the Blake children and severely injuring the three other Blake family members traveling with Salinas.

There is little question that driving conditions were hazardous on both sides of the road. In addition to the winter weather advisory, there was evidence that 18-wheelers parked off the side of the highway to get off the slick roads. There was also evidence that in the ninety minutes preceding the collision, there were several accidents—single-vehicle and multi-vehicle—on I-20 westbound and I-20 eastbound. At 3:00 p.m., a driver on I-20 westbound lost control, crossed the center median, and collided with a vehicle on I-20 eastbound approximately 4.5 miles from where Salinas and Ali collided. Also at 3:00 p.m., a driver elsewhere on I-20 westbound hit a concrete barrier. At 4:01 p.m., roughly 100 feet down I-20 westbound from that accident, another vehicle lost control and hit a concrete barrier. At 3:30 p.m., a car went off the road on I-20 eastbound. The officer responding to the 3:30 p.m. accident described the roads as "so icy I couldn't drive very fast or I would have gone out of control." While that officer was responding to the 3:30 p.m. accident on I-20 eastbound, a pileup occurred on I-20 westbound. A different driver—traveling on I-20 westbound approaching the pileup— hit her brakes to avoid colliding with the stopped vehicles. In doing so, she lost control of her car, which went into the center median, rolled, and entered traffic on I-20 eastbound, where it collided with an

eastbound 18-wheeler. The driver of that 18-wheeler estimated he was traveling at five miles per hour at the time of impact. The car's driver was not injured. The officer responding to that accident said the driver lost control of her car "because of the icy roadway" and described the roads as "covered in ice." This cross-median accident was roughly 50 miles away from where Salinas and Ali collided. The first responders at Ali and Salinas's collision also recounted that the roads were icy and that they needed to travel slowly, approximately 10-15 miles per hour. One of the responding officers testified, "You couldn't walk on [the road]. It was like a skating rink."

Neither Ali nor Ackerman checked the weather before they started the stretch of the drive on which the collision occurred. They had no knowledge of the 2:50 p.m. advisory, and at trial, Ali could not remember if he had seen the earlier advisory. Ali testified that the roads were wet but that he didn't need to drive any slower because the truck "handled just fine. Traction was good." There was also evidence that Ali passed three different accidents in the hour preceding the collision. Ali testified that he did not remember seeing these accidents but would not deny that he did.

Ali's speed was extensively discussed at trial. From 2:41 p.m. to 4:26 p.m., the Blakes' expert testified that Ali's speed averaged 60.57 miles per hour. Immediately prior to the F-350 crossing the median at 4:30 p.m., Ali was accelerating at full throttle after having slowed down. When Ali pressed the brake after spotting the F-350, the 18-wheeler was going approximately 50 miles per hour. At the time of impact, the 18-wheeler was going approximately 43-45 miles per hour.

The plaintiffs' expert testimony indicated that roughly two seconds transpired between when Salinas lost control in the eastbound lanes and when he collided with Ali in the westbound lanes.

The collision was catastrophic for the Blake family. Seven-year-old Zackery Blake was killed. Twelve-year-old Brianna Blake was rendered a permanent quadriplegic. Fourteen-year-old Nathan Blake and Jennifer Blake suffered traumatic brain injuries as well as physical injuries. Salinas was treated at a local hospital but was discharged within hours.

Jennifer Blake, individually and as next friend for Nathan Blake and as heir of Zackery Blake's estate, and Eldridge Moak, in his capacity as guardian of Brianna Blake's estate, sued Werner and Ali. Werner acknowledged that Ali was acting in the course and scope of his employment and accepted vicarious liability for his conduct.

The jury found Werner and Ali liable. It apportioned 70% of the responsibility for causing the Blakes' injuries to Werner employees other than Ali, 14% to Ali, and 16% to Salinas. It awarded Jennifer Blake $16,500,000, Nathan Blake $5,000,000, and Brianna Blake $68,187,994. The district court rendered judgment against Werner and Ali, awarding these amounts plus court costs and interest. The Blakes settled with Salinas before trial. Werner and Ali received a credit from the settlement.

Werner and Ali appealed. They challenged: (1) the legal and factual sufficiency of the jury's negligence liability finding against Ali, (2) the legal and factual sufficiency of the jury's negligence liability findings against Werner, (3) jury charge issues, (4) apportionment

issues, (5) admission of evidence, and (6) the award of future medical expenses. 672 S.W.3d 554, 568 (Tex. App.—Houston [14th Dist.] 2023). The case was argued to a three-justice panel, but before the panel issued a decision, the court voted to consider the case en banc. *Werner Enters., Inc. v. Blake*, 2021 WL 3164005, at *1 (Tex. App.—Houston [14th Dist.] July 27, 2021) (en banc order). The en banc court of appeals affirmed the district court's judgment. 672 S.W.3d at 618. Four justices dissented, across two opinions. The dissenting justices agreed with the majority that sufficient evidence supported the jury's negligence finding against Ali. *Id.* at 618 (Christopher, C.J., dissenting), 627 (Wilson, J., dissenting). The first dissent would have held that the district court erred in submitting Question 1 of the jury charge, the "direct" theory of Werner's liability. *Id.* at 623 (Christopher, C.J., dissenting). Because apportionment was based, in part, on the jury's answer to Question 1, the dissent would have remanded for a new trial. *Id.* The second dissent would have rendered a take-nothing judgment as to the Blakes' derivative theories of liability against Werner based on the "Admission Rule"—the idea that an employer's admission that an employee was acting in the course and scope of his employment generally prevents plaintiffs from pursuing derivative theories of negligence against the employer—which the second dissent would have adopted. *Id.* at 625 (Wilson, J., dissenting). The second dissent would have remanded the remaining claims for a new trial. *Id.*

Werner and Ali petitioned for review in this Court. They argue: (1) Ali's negligence, if any, did not proximately cause the accident, (2) Ali owed no duty to the Blakes under these circumstances, (3) Werner

8

cannot be held liable for the accident under a negligent training theory or other derivative theories, (4) the Court should adopt the "Admission Rule" when assessing employer liability, (5) the court of appeals overlooked multiple *Casteel* problems in the jury charge, and (6) the jury's apportionment findings are unsupported by the evidence. We granted the petition.

## II.

## A.

We first consider the defendants' contention that Ali's negligence was not a proximate cause of the plaintiffs' injuries. The requirement of proximate cause has been a foundational pillar of the common law throughout our history. As the ancient maxim instructs, "*In jure non remota causa sed proxima spectatur*" ("In law, the immediate, not the remote, cause is considered"). *Wichita City Lines, Inc. v. Puckett*, 295 S.W.2d 894, 898 (Tex. 1956) (attributing the Latin phrase to Sir Francis Bacon (1561–1626)).

We have described proximate cause as requiring application of "a practical test, the test of common experience, to human conduct when determining legal rights and legal liability." *Hous. Lighting & Power Co. v. Brooks*, 336 S.W.2d 603, 607 (Tex. 1960) (quoting *City of Dallas v. Maxwell*, 248 S.W. 667, 670 (Tex. Comm'n App. 1923, holding approved, judgm't adopted)). Our precedents divide proximate cause into two elements: (1) cause in fact, and (2) foreseeability. *Pediatrics Cool Care v. Thompson*, 649 S.W.3d 152, 158 (Tex. 2022). The two elements are distinct, but they often entail overlapping considerations because they

9

operate together to focus liability on those with a sufficient connection to and responsibility for the injuries.

Cause in fact has two components: (1) "but-for" causation, and (2) "substantial-factor" causation. *Id.* The defendant's negligence is the "but-for" cause of an injury if, "without the act or omission, the harm would not have occurred." *Id*. (quoting *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018)). But-for causation is essential to liability, but proving but-for causation alone does not establish that the defendant's negligence was a cause in fact of the plaintiff's injuries. "[I]t is not enough that the harm would not have occurred had the actor not been negligent." *Lear Siegler*, 819 S.W.2d at 472 (quoting RESTATEMENT (SECOND) OF TORTS § 431 cmt. a). The plaintiff must also prove that "the [negligent] act or omission was a substantial factor in bringing about the injury." *Rogers v. Zanetti*, 518 S.W.3d 394, 402 (Tex. 2017); *see also Pediatrics*, 649 S.W.3d at 158.

The slippery word "substantial" can be difficult to nail down in many contexts. But in this context, our precedents provide useful contours. We have on several occasions described the "substantial-factor" requirement with reference to the following instructive passage from the Restatement:

> The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred.

RESTATEMENT (SECOND) OF TORTS § 431 cmt. a; *see Lear Siegler*, 819 S.W.2d at 472; *Crump*, 330 S.W.3d at 224; *Zanetti*, 518 S.W.3d at 402; *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765, 770 (Tex. 2007).

A key insight of this passage, to which we have pointed before, is that within the concept of proximate cause, there "always lurks the idea of responsibility." *Lear Siegler*, 819 S.W.2d at 472; *Crump*, 330 S.W.3d at 224; *Flores*, 232 S.W.3d at 770. The requirement of proximate causation—with its subsidiary requirement of substantial-factor causation—compels inquiry into whether, given the nature of the defendant's causal connection to the accident, it is reasonable to conclude that he is "actually responsible for the ultimate harm." *Crump*, 330 S.W.3d at 224. If, on the other hand, the defendant's conduct "merely creates the condition that makes the harm possible, it is not a substantial factor in causing the harm as a matter of law." *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016) (internal quotation omitted). In other words, "cause in fact is not established where the defendant's negligence does no more than furnish a condition which makes the injuries possible." *IHS*, 143 S.W.3d at 799.

## B.

By answering "yes" to the question about Ali's liability, the jury found that Ali's negligence was a substantial factor in bringing about the Blakes' injuries. To overcome that finding on appeal, the defendants must demonstrate that no reasonable juror could have so found. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) ("Judgment without or against a jury verdict is proper at any course of the proceedings only when the law does not allow reasonable jurors to decide

11

otherwise."). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 827.

We conclude the defendants have made this demanding showing. The jury charge distinguished between but-for causation and substantial-factor causation and required the jury to find both. Given a proper understanding of substantial-factor causation—an understanding consistent with the jury charge given in this case—no reasonable juror could assign responsibility for these injuries to anyone other than the driver who lost control of his vehicle and hurtled across a 42-foot median into oncoming highway traffic, thereby causing this accident and these injuries in every legally relevant sense of the word.[1]

In defense of the verdict, the Blakes point to evidence that if Ali had been going fifteen miles per hour, then "[t]he pickup would have spun safely across the roadway and into the grass because there was nothing for it to hit." They also emphasize that Ali knew that passenger vehicles are more likely than 18-wheelers to slide on ice, and he knew what the consequences of such a loss of control in front of an 18-wheeler would be. He also knew or should have known the conditions were

---

[1] Regarding the question—"[w]as the negligence, if any, of Shiraz Ali in the operation of the Werner truck on December 30, 2014, a proximate cause of the injuries in question?"—the jury charge defined proximate cause as:

> a cause that was a substantial factor in bringing about an injury, and without which cause such injury would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a commercial truck driver using ordinary care would have foreseen that the injury, or some similar injury, might reasonably result therefrom. There may be more than one proximate cause of an injury.

12

hazardous, and he therefore should have driven more carefully or perhaps stayed off the road altogether. And ultimately his excessive speed at least exacerbated the Blakes' injuries, as compared to what the injuries would have been had Ali been traveling at a safe speed. The Blakes thus argue that Ali's negligent speed was a proximate cause, not merely a furnishing condition, of their injuries. Ali's negligent speed was plainly a but-for cause of the accident, they contend, and because his negligence did not terminate before the injury, Ali can be liable for it. Moreover, the causal connection was not so attenuated as to foreclose liability, they urge. The bottom line, for the plaintiffs, is that Ali was negligently driving too fast on ice, and because of that fact, he was unable to avoid colliding with the vehicle carrying the Blakes. He therefore caused them greater injury than if he had been traveling more slowly, and a reasonable juror could consider Ali's speed a proximate cause of the Blakes' injuries.

The court of appeals agreed. 672 S.W.3d at 578. It considered Ali's testimony that he knew that passenger vehicles are more likely to lose control on ice than 18-wheelers and that he knew what the consequences of a passenger vehicle losing control on an icy highway in front of an 18-wheeler would be. *Id.* at 577. The court of appeals also looked to both parties' accident-reconstruction expert testimony, which indicated that if Ali had been driving fifteen miles per hour, the collision would not have happened. *Id.* Evaluating this evidence in the light most favorable to the jury finding, the court of appeals concluded that the evidence enabled a reasonable juror to find that Ali's negligence was a substantial factor in bringing about the injuries, that his negligence

13

was a but-for cause of the injuries, and that it was reasonably foreseeable that the injuries could result from his negligence. *Id.* at 577–78. The court of appeals thus held that sufficient evidence supported the jury's finding that Ali's negligence was a proximate cause of the Blakes' injuries. *Id.* at 578.

We can assume sufficient evidence that Ali's speed—and even his presence on the icy road at all—was negligent under these weather conditions. And we can assume that Ali's negligent driving was a but-for cause of the injuries, in that "without [Ali's negligence] harm would not have occurred." *Zanetti*, 518 S.W.3d at 402. The Blakes focus their defense of the verdict primarily on the abundant evidence impugning Ali's driving and his decisions in the hours and moments leading up to the accident. They do not fault Ali, however, for his reaction once Salinas lost control. To the contrary, their expert testified that Ali did the best he could during the two seconds preceding the crash.[2] Ali's

---

[2] Q. And I think you testified that it only took Mr. Salinas'[s] vehicle 2.1 seconds to get across the grassy median?

A. To the area of impact, yes, that's about right.

Q. Okay.

A. About two seconds.

Q. And that you testified that Mr. Ali had reacted within a half a second?

A. Yeah, he -- Mr. Ali reacted basically as soon as he saw that pickup truck beginning to enter the center median by taking his foot off the gas and moving it towards the brake. So his reaction was appropriate to the conditions that he saw coming up ahead of him.

negligence, instead, was to be found only in the manner of his driving *before* Salinas lost control across the median from him. The plaintiffs' principal theory of the case is that if Ali had not been driving too fast in the icy conditions, things would have turned out much differently for the Blakes, who would be alive and well if not for Ali's unsafe driving.

Powerful as this line of argument may be in the wake of such terrible consequences for the blameless victims, it addresses only but-for causation. It does not account for the requirement of substantial-factor causation, which we conclude is lacking here as a matter of law. That is so because the sole substantial factor in bringing about this accident— the singular fact that substantially explains why the accident happened and who is responsible for the plaintiffs' injuries—was Salinas's losing control of his F-350 and crossing a 42-foot grassy median into oncoming highway traffic before Ali had time to react. The Blakes are correct, of course, that there can be more than one proximate cause of an injury. *Lear Siegler*, 819 S.W.2d at 471. That does not mean there is always more than one proximate cause. On these facts, we hold that there was only one.

"Where the initial act of negligence was not the active and efficient cause of plaintiffs' injuries, but merely created the condition by which the second act of negligence could occur, the resulting harm is too attenuated from the defendants' conduct to constitute the cause in fact of plaintiffs' injuries." *IHS*, 143 S.W.3d at 799. Likewise, the

---

Q. Okay. So no criticisms about how fast he reacted to seeing Mr. Salinas come across?

A. No, not at all. He reacted very quickly.

"'happenstance of place and time' may be too attenuated for liability to be imposed under the common law." *Id.* (quoting *Lear Siegler*, 819 S.W.2d at 472).[3]

Under the undisputed facts of this case, the Blakes' injuries happened because Trey Salinas, in the course of two or three seconds, lost control of his F-350, hurtled across the median into oncoming traffic on I-20, and collided with a vehicle driving below the speed limit in its proper lane on the other side—a vehicle which, tragically for the Blakes, happened to be an 18-wheeler. Ali's "initial act of negligence"—whether it was his speed in icy conditions or his presence on the highway—"merely created the condition by which the second act of negligence [Salinas's loss of control] could" bring about the injury. *Id.* "[T]he resulting harm is too attenuated from [Ali's] conduct to constitute the cause in fact of plaintiffs' injuries." *Id.*

Nothing Ali did or didn't do contributed to Salinas's truck hitting ice, losing control, veering into the median, and entering oncoming traffic on an interstate highway. However Ali was driving, the presence of his 18-wheeler in its proper lane of traffic on the other side of I-20

---

[3] The dissenting justices emphasize distinctions between the facts of this case and the facts of *Lear Siegler* and other precedents of this Court on which we rely. *Post* at 7–8 (Bland, J., dissenting). We do not rely on *Lear Siegler* and our other precedents describing the law of substantial-factor causation because of factual similarities between those cases and this one. We rely on them, instead, because in our view the legal rule to which they give rise, when applied to the facts of this case, dictates the result we reach. Our two precedents that bear some factual similarity to this case are *Biggers v. Continental Bus System, Inc.*, 303 S.W.2d 359 (Tex. 1957), and *Baumler v. Hazelwood*, 347 S.W.2d 560 (Tex. 1961). As discussed in Part II.C., we upheld the jury verdict in *Biggers* but reversed it in *Baumler*, as we do today.

16

at the precise moment Salinas lost control is just the kind of "happenstance of place and time" that cannot reasonably be considered a substantial factor in causing these injuries. Instead, Salinas losing control and hurtling across the median was *the* substantial factor in bringing about the injuries. The presence of Ali's truck on the other side of the median at that precise moment was merely "the condition that ma[de] the harm possible." *Stanfield*, 494 S.W.3d at 97 (quoting *IHS*, 143 S.W.3d at 800).

Surely, as the plaintiffs urge, if Ali had been driving more slowly, Salinas would not have collided with him. Just as surely, however, if Ali had been driving 100 miles per hour, Salinas would not have collided with him. Had either driver been driving much slower or faster, this accident would not have happened as it did. *See Myers v. Bright*, 609 A.2d 1182, 1188 (Md. 1992) ("[H]ad [the plaintiff] been going much faster she also would have avoided the accident."). And if no vehicle at all had been in Salinas's path as he crossed into oncoming traffic, the Blakes would not have been injured. On the other hand, if the vehicle in that spot had been a small car rather than an 18-wheeler, Salinas's F-350 could have killed or severely injured its occupants.

The position and speed of the vehicles on the other side of a broadly divided highway when an oncoming F-350 suddenly hurtles across the median toward them is precisely the kind of "happenstance of place and time" that can have enormous consequences for the victims of an accident but cannot reasonably be considered the proximate cause of the accident or the resulting injuries. As between the two drivers involved in a head-on collision, substantial-factor causation requires us

17

to assign legal responsibility to the driver whose negligence made *the collision* happen—not to a driver whose negligence merely happened to bring him to a time and place at which another driver unexpectedly and negligently collided with him before he had time to react. The environment on the other side of the divided highway is "the condition that ma[de] the harm possible," *Stanfield*, 494 S.W.3d at 97 (quoting *IHS*, 143 S.W.3d at 800), but the proximate cause of the harm is the out-of-control vehicle entering oncoming traffic. The only contribution Ali's speed (or his decision to stay on the road) made to bringing this accident about was that it put him, in that fateful moment, directly in the path of Salinas's careening F-350—a tragic "happenstance of place and time" if ever there was one, but not a happenstance for which Ali or his employer can reasonably be held responsible under this Court's precedents.[4]

---

[4] We are concerned here only with the assignment of responsibility as between two drivers for injuries caused by the collision of their vehicles. In other words, the question is whether Salinas's driving errors or Ali's driving errors—or some combination of the two—proximately caused the plaintiffs' injuries. As between Salinas's driving and Ali's driving, we hold that Salinas's driving was the sole proximate cause of the Blakes' injuries as a matter of law. We do not thereby hold that the at-fault driver's negligence is *always* the sole proximate cause of the injuries arising from a collision. If the allegation were that a defect in the design of either vehicle contributed to the injuries, for instance, our analysis of causation would require additional considerations that are not required when assigning responsibility as between the driving errors of the two drivers involved in the accident. *See, e.g., Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 665 (Tex. 1999) (discussing vehicle-manufacturer liability under a products-liability theory). Or, if the allegation were that injury-causing conduct apart from the way the two vehicles were driven exacerbated the plaintiffs' injuries, responsibility could be apportioned to the injury-enhancing party. *See Nabors Well Servs., Ltd. v. Romero*, 456 S.W.3d 553, 562–64 (Tex. 2015) (holding that failure to wear a

18

**C.**

The Blakes rely on our decision in *Biggers v. Continental Bus System, Inc.*, 303 S.W.2d 359 (Tex. 1957). *Biggers* involved a collision between a car and a commercial bus on a rural stretch of two-lane highway eight miles north of Huntsville in 1951. *Id.* at 361. The road was wet with rain. *Id.* at 362. At the point of collision, just north of a small bridge, the highway was 24-feet wide. *Id.* at 361. The bus was driving at an excessive speed northward but was properly on the right side of the two-lane road. *Id.* at 361–62. At the same time, three passenger vehicles were traveling southward in a single line toward the bridge. *Id.* As they approached the bridge, the first vehicle "slowed down to observe the creek to ascertain if it was too muddy for fishing." *Id.* at 362. Reacting to the first car, the second and third cars traveling behind the first car also slowed, but the third car slid into the car in front of it. *Id.* The contact "propelled" the second car "somewhat diagonally eastward into the bus'[s] right-hand side of the highway," where it collided with the bus. *Id.*

*Biggers* focuses on the foreseeability aspect of proximate cause, not on the requirement of substantial-factor causation we apply today. We determined that the possibility of such a collision was foreseeable under the circumstances:

> It would be wholly out of keeping with reality to hold that an operator of an automobile traveling on a modern, heavily-traveled public highway cannot and should not, under any circumstances, reasonably foresee that an automobile approaching from the opposite direction may,

seatbelt can be considered alongside driver error in assessing proportionate responsibility for injuries caused by a collision).

19

for some reason, enter the wrong traffic lane and thus be endangered by excessive speed which makes stopping, deceleration or turning aside to avoid a collision impossible or more difficult.

*Id.* at 364.

*Biggers* is legally distinguishable from our decision today in part because it primarily addresses foreseeability and but-for causation rather than focusing on the requirement of substantial-factor causation as enunciated in our more recent decisions. That is not to suggest these discrete inquiries are sealed off from one another. Just as the substantial-factor inquiry incorporates "the idea of responsibility" into the question of proximate cause, *Lear Siegler*, 819 S.W.2d at 472, the foreseeability inquiry likewise "addresses the proper scope of a defendant's legal responsibility for negligent conduct," *Zanetti*, 518 S.W.3d at 402. Both inquiries involve "practical" application of the "test of common experience, to human conduct." *Brooks*, 336 S.W.2d at 607 (quoting *Maxwell*, 248 S.W. at 670). And both inquiries serve a common purpose, which is to ask, under the banner of proximate cause, "whether a defendant's blameworthy act was sufficiently related to the resulting harm to warrant imposing liability for that harm on the defendant." *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 839 (1996) (discussing proximate cause generally). Naturally, similar considerations will often bear on both substantial-factor causation and foreseeability.

The two are nevertheless distinct. Foreseeability asks "what should reasonably be anticipated in the light of common experience applied to the surrounding circumstances." *Biggers*, 303 S.W.2d at 364.

20

Substantial-factor causation asks, also in light of common experience, whether "the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." *Crump*, 330 S.W.3d at 224 (quoting *Lear Siegler*, 819 S.W.2d at 472).

*Biggers* is also factually distinguishable from today's case, primarily because it involved vehicles traveling in close proximity on a narrow, two-lane highway crossing a bridge. Applying a "practical, common sense test, the test of common experience," *Biggers* rejected the defendants' contention that, in such circumstances, the excessive speed of the vehicle traveling in its proper lane can *never* be a proximate cause of a collision with an oncoming car that moves unexpectedly into oncoming traffic. 303 S.W.2d at 364.

The very same "practical, common sense test, the test of common experience" yields a different result, in our view, when applied to the modern experience of driving on a four-lane highway divided by a broad, grassy median. The vehicles in *Biggers* were operating in narrow quarters at a bridge crossing, sharing a two-lane road, approaching each other in close proximity. Vehicles on a divided highway, by contrast, operate on what are essentially two different roads. The possibility that a driver on a two-lane rural highway will mistakenly enter oncoming traffic, while still remote as a matter of common experience outside of designated passing zones, is vastly more likely than the possibility that a driver on a broadly divided highway will cross the median and enter oncoming traffic. Nothing in *Biggers* suggests we must extend its

21

reasoning about the practical realities of driving on a two-lane highway in 1951 to the much different practical reality of driving on a four-lane, divided interstate highway in the twenty-first century.[5]  We need not overrule *Biggers*, but neither does it compel the result of this case.

Even in the context of two-lane highways divided only by a stripe of paint, we made clear after *Biggers*, in the factually similar case of *Baumler v. Hazelwood*, that the defendant's excessive speed is not necessarily a proximate cause of a collision with an oncoming driver who suddenly veers onto the wrong side of the road.  *See Baumler v. Hazelwood*, 347 S.W.2d 560, 561 (Tex. 1961).  Distinguishing *Biggers*, we held that liability in such circumstances "depends upon the facts." *Id.* at 565.  We overturned a jury verdict assigning liability to a driver who was struck when another vehicle entered his side of the road, just as we do today.  *Id.*

A key fact, in both *Baumler* and *Biggers*, was the reaction time available to the driver traveling in his correct lane.  The reaction time was just a split second in *Baumler*.  *Id.* at 564.  Yet in *Biggers*, "the car which got into the pathway of the bus got there at least 3 1/2 seconds before the collision."  *Id.* at 565.  Indeed, as we noted in *Baumler*, the Court in *Biggers* hypothesized that if, instead of 3.5 seconds, the car had "entered the bus'[s] lane of traffic less than two seconds before the

---

[5] According to the Texas Department of Transportation, Texas's first interstate highway was the Gulf Freeway (I-45) in Houston, the first major portion of which opened in 1952, one year after the accident in *Biggers*. *See Interstate and U.S. Highway Facts*, TEX. DEP'T OF TRANSP., https://www.dot.state.tx.us/tpp/hwy/ihhwyfacts.htm (last visited June 25, 2025).

collision," then "we might find justification for setting aside" the verdict. *Biggers*, 303 S.W.2d at 363. In today's case, the Blakes' expert agreed that the *entire* sequence of events—from Salinas losing control to the moment of collision all the way across the median—lasted no more than roughly two seconds. Ali's reaction time after Salinas "got into the pathway" of the 18-wheeler on the wrong side of the interstate was therefore much lower than the 3.5 seconds available to the bus driver in *Biggers*. Indeed, as mentioned above, the plaintiffs' expert witness found no fault in the way Ali reacted once Salinas's vehicle started hurtling toward him. *See supra* note 2.

Both *Biggers* and *Baumler* demonstrate, as we would expect, that identifying the proximate cause of an accident on the road "depends upon the facts." *Baumler*, 347 S.W.2d at 565. That does not mean, however, that a jury may always answer as it chooses, irrespective of the facts. As in *Baumler*, an appellate court must overturn a jury verdict if the facts in evidence, taken in the light most favorable to the verdict, do not support a reasonable theory of proximate causation. In these prior cases, as today, one key fact informing our assessment of proximate cause is the defendant driver's reaction time. Yet, as discussed above, the most decisive fact distinguishing this case from *Biggers* is the vast difference between a 24-foot-wide two-lane highway and an interstate highway divided by a 42-foot grassy median.

We are directed to just one other reported American case in which an out-of-control vehicle crossed the wide median of a modern, divided highway and the injured plaintiff sued a driver who had insufficient time to react before colliding with the errant vehicle. *See Creel v. Loy*,

23

524 F. Supp. 3d 1090 (D. Mont. 2021). As here, the court granted the possibility that the defendant was driving too fast given the rainy conditions. *See id.* at 1100. The court nevertheless concluded that the injuries "were not foreseeably and substantially caused by [the defendant's] alleged negligence." *Id.* at 1100–01 (applying Montana law on proximate causation).[6]

Neither the dearth of such cases nor the outcome of the Montana case should be surprising. Head-on collisions tragically do happen. But as a "practical" matter of "common experience," we normally would not blame the driver who stayed in his lane and was struck, before he had time to react, by an out-of-control vehicle careening unexpectedly across a wide median into oncoming traffic. *Brooks*, 336 S.W.2d at 607 (quoting *Maxwell*, 248 S.W. at 670). Even in treacherous conditions—perhaps especially in treacherous conditions—each driver has a personal responsibility to maintain control of his vehicle and to stay on his side of the road. Our shared sense that each driver on the road bears that basic responsibility is what makes modern high-speed driving possible. Every driver proceeds in unspoken reliance on other drivers maintaining control of their vehicles and staying on their side of the road. Our lives are in each other's hands every second we spend on a highway in the multi-ton steel projectiles we drive. In most cases, we

---

[6] The dissenting justices conclude that the evidence of causation in *Creel v. Loy* was weaker than the evidence adduced against Ali. *Post* at 8 (Bland, J., dissenting). Perhaps so. We do not mention *Creel* because it is factually indistinguishable from this case or because it plays any particular guiding role in our thinking about Texas law. *Creel*'s significance is that it highlights the striking scarcity of precedent from *any* jurisdiction validating the theory of traffic-accident liability advanced in this case.

24

are able to move about the world safely and reliably on modern highways, but that is only because we trust other drivers not to lose control of their deadly vehicular weapons and careen head-long into us. Our modern economy—indeed, our modern way of life—is built on that trust. When a driver breaks that trust and causes a deadly accident, legal responsibility lies with him, not with the driver he hits after losing control.

That general rule may be subject to some variance, as in *Biggers* and *Baumler*, when the accident involves vehicles driving in close proximity on two-lane roads. But we struggle to imagine a scenario in which the law could ever reasonably fault a driver on one side of a broadly divided highway for a collision caused by an oncoming vehicle that loses control, crosses the median, and strikes him before he has time to react.

For these reasons, as a matter of law, Ali's negligence was not a substantial factor in bringing about the Blakes' injuries, the sole proximate cause of which was Salinas's loss of control. The defendants also argue that the injury to the Blakes was not foreseeable and that Ali owed no duty to oncoming drivers and passengers under these circumstances. We need not confront these issues, which are rendered superfluous by our holding regarding the substantial-factor element of proximate causation.

## III.

We turn now to the effect of our holding regarding Ali's liability on the liability of Ali's employer, Werner. For the following reasons, the

judgment against Werner cannot stand given that its driver, Ali, did not proximately cause the plaintiffs' injuries.

The jury was asked to assign both (1) "derivative" liability to Werner for inadequate training and supervision of Ali, and (2) "direct" liability to Werner independent of its training and supervision of Ali. The jury did so. The court of appeals affirmed on both counts, but only after reaching the conclusion—which we reverse above—that sufficient evidence supports the jury's finding that Ali's negligence proximately caused the plaintiffs' injuries. 672 S.W.3d at 578, 602, 605.

As for Werner's "derivative" liability, the court of appeals upheld the jury's finding that Werner's negligent training and supervision of Ali proximately caused the injuries. *Id.* at 605. It pointed to evidence that Ali lacked the training and experience to safely drive an 18-wheeler in hazardous conditions and that Werner knew or should have known that he was unfit for the assignment. *Id.* at 603–05.

Werner's negligent training and supervision, even if proved, could not have been a proximate cause of the Blakes' injuries because Ali's negligent driving was not a proximate cause. We have not recognized negligent training or supervision as an independent theory of tort liability. But with respect to the analogous allegation of negligent hiring, we have determined that any such claim "requires negligence by two separate parties: the employer's negligence in hiring the employee and the employee's subsequent negligent act or omission. Both negligent acts must proximately cause the injury." *Endeavor Energy Res., L.P. v. Cuevas*, 593 S.W.3d 307, 311 (Tex. 2019).

26

Assuming that claims for negligent training and supervision have independent viability apart from an employer's usual respondeat superior liability, such claims would be subject to the same requirement we have applied to negligent hiring claims. Under that rule, because Ali's driving was not a proximate cause of the accident, there can be no derivative liability imposed on Werner for its failure to adequately train or supervise him. In other words, because Ali's unsafe driving did not proximately cause the injuries, Werner cannot be separately liable for facilitating Ali's unsafe driving.

The principal theory of "direct" liability, which the court of appeals affirmed, was that Werner created unreasonable risk for other travelers by sending an inexperienced, trainee driver like Ali into winter weather unable to access important updates about the weather. 672 S.W.3d at 591–99. Werner breached this duty, the court of appeals held, by sending Ali on the run without access to important weather updates, allowing him to drive despite his receiving a low score on a recent driving exam, and sending him into the storm untrained to deliver a time-sensitive load. *Id.* at 599. The Blakes rest their theory of Werner's direct liability on this Court's recent observation that "a party who takes affirmative acts that create a danger on a public highway can be held responsible for the results of those actions, along with other responsible actors." *See United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627, 639 (Tex. 2023).

This theory of liability cannot be separated from the predicate question of Ali's responsibility for the accident. Like the "derivative" liability theory of negligent hiring and supervision, this "direct" liability

27

theory takes for granted that Ali's driving proximately caused the injuries and then seeks to assign responsibility for Ali's unsafe driving to Werner. This ostensibly "direct" theory of liability is therefore just as "derivative" of Ali's liability as the negligent hiring and supervision claim.

There are no viable theories of liability alleged against Werner that are independent of Ali's responsibility for the Blakes' injuries. All the claims against Werner are, in that sense, "derivative" of Ali's liability—for which Werner would bear responsibility as Ali's employer, whether or not the Blakes alleged additional theories of Werner's liability.[7] As a result, all claims against Werner fail for the same reason that all claims against Ali fail: Ali's driving did not proximately cause this accident or the resulting injuries, the sole proximate cause of which was Salinas's catastrophic loss of control of the vehicle carrying the Blakes.

## IV.

The foregoing holdings dispose of all claims and require rendition of judgment for the defendants. We therefore do not reach the parties' remaining issues. The court of appeals' judgment is reversed, and judgment is rendered for the defendants.

---

[7] The defendants and some amici ask us to adopt the "Admission Rule," under which defendants who admit that an employee was acting in the course and scope of employment need not also defend against other derivative theories of negligence. Because our holding regarding proximate cause disposes of all claims against Werner even in the absence of the Admission Rule, we need not consider the matter further.

28

_____
James D. Blacklock
Chief Justice

**OPINION DELIVERED:** June 27, 2025